UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STEMCOR USA, INC.,

                            Petitioner,

               -against-                                        14-cv-00921 (LAK)


MIRACERO, S.A. de C.V.,

                            Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


               Appearances:


                            Andrew N. Krinsky
                            Linda S. Roth
                            Christopher Tumulty
                            TARTER KRINSKY & DROGIN LLP
                            *Attorneys for Petitioner*


                            David Lopez
                            Lance Hunter "Luke" Beshara
                            PULMAN, CAPPUCCIO, PULLEN, BENSON & JONES LLP
                            *Attorneys for Respondent*


LEWIS A. KAPLAN, *District Judge.*

               Petitioner Stemcor USA, Inc. ("Stemcor") seeks to vacate an arbitration award

obtained against it by respondent Miracero, S.A. de C.V. ("Miracero").[1]  Miracero cross-moves to

_____

        [1]

               DI 2.

confirm the award.[2]  It moves also for attorneys' fees.[3]  As will appear, the award will be confirmed.

## Facts

### The Arbitration

Stemcor, a U.S. company, sold steel coils to Miracero, a Mexican steel importer and distributor.  The dispute here concerns fallout from an ensuing *contretemps* with the Mexican tax authorities.

Miracero contracted in 2007 to purchase the steel coils, which Stemcor delivered to Miracero in Mexico as promised.[4]  Miracero's steel imports were eligible for preferential tax treatment by the Mexican tax authorities under the North American Free Trade Agreement.  However, Stemcor twice failed to respond to two letters from the Mexican tax authorities requesting that it verify the country of origin for steel sold to several of its customers, including Miracero.[5]  In September 2011, the Mexican authorities suspended preferential treatment for several of Stemcor's customers, Miracero among them.  They then assessed Miracero taxes, duties, and fees of $2.6 million.[6]  Miracero challenged the assessments in a series of Mexican legal proceedings, eventually

---

[2]    DI 34.

[3]    DI 37.

[4]    Decl. of Christopher M. Tumulty in Support of Stemcor's Motion to Vacate Arbitration Award ("Tumulty Decl.") [DI 5] Ex. 1 ("Final Award" (Jan. 16, 2014)) ¶ 5; DI 5 Ex. 15 ("Stipulation of Uncontested Facts" (Sept. 4, 2013)).

[5]    DI 5 Ex. 1 ¶¶ 6-7; DI 5 Ex. 15 ¶¶ 14-15.

[6]    DI 5 Ex. 1 ¶ 10.

spending nearly $340,000 to overturn them.[7]

The agreements between Stemcor and Miracero contain a clause providing for arbitration of "contract disputes" under the rules of the American Arbitration Association ("AAA").[8] In July 2012, Miracero commenced arbitration against Stemcor in New York to recover the costs of litigating the Mexican tax assessments on the theory that Stemcor's failure to verify the steel's country of origin breached duties owed to Miracero under the agreements and the Convention on the International Sale of Goods ("CISG").[9]

The principal dispute between the parties is whether the claim based on Stemcor's failure to verify the origin of the steel is a "contract dispute" within the meaning of the arbitration clause. On April 12, 2013, the arbitral panel held that it was and took jurisdiction over the dispute.[10] On January 16, 2014, after a four-day hearing, the panel awarded Miracero $819,437.86 for its attorneys' fees and costs in both the Mexican legal proceedings and the New York arbitration.[11] The arbitrators determined that Stemcor had been obliged to act "reasonably" in respect of its sales to Miracero and that it had breached that duty both by its "failure to act" in responding to the letters from the Mexican tax authorities and by failing to have "adequate training, policies and procedures in place that would have mitigated substantially or even obviated the actions that Miracero had to

---

[7]   *Id.* ¶ 35(a).

[8]   DI 5 Ex. 4.

[9]   Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 1489 U.N.T.S. 3.

[10]  Decl. of David Lopez in Support of Miracero's Cross-Motion to Confirm Arbitration Award and in Opposition to Stemcor's Motion to Vacate ("Lopez Decl.") [DI 35] Ex. 17 at 2-3.

[11]  *See* DI 5 Ex. 1 ¶ 35.

4

take in Mexico in 2012 and 2013 to overturn" the tax assessments.[12]

*Prior Proceedings in this Court*

On February 12, 2014, Stemcor moved to vacate the arbitration award.  Stemcor argues that (i) the award is defective because Miracero's claims were not arbitrable, (ii) the award should be vacated as a matter comity and on the basis of judicial estoppel, essentially on the theory that the panel failed to consider adequately the outcome of the Mexican legal proceedings, and (iii) the arbitral panel acted *ultra vires* when it granted Miracero attorneys' fees and costs.  Miracero cross-moved to confirm the arbitral award on May 30, 2014 and simultaneously moved for attorneys' fees as sanctions against Stemcor.

Magistrate Judge Ronald L. Ellis issued a report and recommendation on these motions on August 22, 2014.[13]  Judge Ellis recommended rejection of all of Stemcor's arguments as to arbitrability and the propriety of the underlying award.  He further recommended upholding the arbitral panel's award of fees and costs to Miracero and against an award of attorneys' fees for this proceeding because there was no evidence that Stemcor had conducted itself in bad faith.[14]

Stemcor objected to the magistrate judge's report and recommendation on September

---

[12]    *Id.* ¶ 31.

[13]    DI 46.

[14]    In addition, Miracero requested in its briefing that post-award interest on the arbitral award run until the date of payment.  Stemcor previously deposited the award amount into an interest-bearing account with the Court.  *See* Decl. of Linda S. Roth [DI 43] Ex. B. Magistrate Judge Ellis recommended that interest be awarded only from February 15, 2014 until May 12, 2014 because Stemcor had paid the award amount into an interest-bearing account.  *See* DI 46 at 22; FED. R. CIV. P. 67.  Miracero has raised no objection on this point, as to which the Court adopts the Magistrate Judge's recommendation.

5

8, 2014.[15]

## Discussion

"[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[16]  As we shall see, there is no basis for concluding that the arbitrators here exceeded the "the capacious bounds of their discretion."[17]

### Timeliness of Stemcor's Objections

The Court first dispenses with a somewhat picayune preliminary matter.  Miracero asserts that Stemcor's objections to the magistrate judge's report was untimely.  The Court is unconvinced.

The magistrate judge's report and recommendation indicated that objections were due "fourteen days after being served a copy of the recommended disposition."[18]  The fourteenth day after the report appeared on the ECF system was Friday, September 5, 2014.  The docket entry, however, indicated that objections were due "by 9/8/2014" – the seventeenth day after the report

---

[15]

DI 47.

[16]

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

[17]

*Banus v. Citigroup Global Markets, Inc.*, 09 Civ. 7128 (LAK), 2010 WL 1643780, at *4 (S.D.N.Y. Apr. 23, 2010), *aff'd*, 422 F. App'x 53 (2d Cir. 2011).

[18]

DI 46 at 26.

appeared on ECF and the date on which Stemcor actually filed its objections.[19]

Miracero insists that Stemcor's objections are untimely because Stemcor was bound by the fourteen-day deadline to file objections to a magistrate judge's report under Rule 72[20] and the Magistrates Act[21] rather than by the seventeen-day deadline that appears on the docket sheet.[22]  It is mistaken.

In this case, as in virtually all cases in this district, the report and recommendation was filed electronically with the Clerk.  When that occurred, a notice of electronic filing was sent to all counsel, including Stemcor's.  There is no claim that the notice of electronic filing was not sent automatically and immediately upon the filing of the report and recommendation or that it was not received.

Federal Rule of Civil Procedure 6(d) provides in relevant part that "[w]hen a party may or must act within a specified time after service and service is made under" Rule 5(b)(2)(E) – which specifies that service of a paper by electronic means is effective upon transmission provided only that it is in fact received – "3 days are added after the period would otherwise expire under

---

[19]

    *See* DI 47.

[20]

    *See* FED. R. CIV. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

[21]

    *See* 28 U.S.C. § 636(b)(i)(C) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." ).

[22]

    *See* Miracero's Response to Stemcor's Objections [DI 48] at 3-5; Letter from Miracero to the Honorable Ronald L. Ellis (Sept. 23, 2013) [DI 50].

Rule 6(a)."[23]  Section 9.1 of this Court's Electronic Case Filing Rules and Procedures provides in relevant part that:

> "In cases assigned to the ECF system, service is complete provided all parties receive a Notice of Electronic Filing (NEF), which is sent automatically by email from the Court . . . .  Transmission of the NEF constitutes service upon all Filing and Receiving Users who are listed as recipients of notice by electronic mail."[24]

Thus, this and other courts have construed Federal Rule 5(b)(2)(E) to provide that the transmission of a notice of electronic filing constitutes transmission of the "paper" that was filed electronically. Indeed, Miracero does not claim otherwise.  Moreover, the rule makes perfect sense because the notice of electronic filing is the practical cyber-equivalent of physical service of a tangible copy of the filed paper.[25]  The recipient of the notice has only to access the docket sheet via the recipient's computer or other device in order to read and print the electronically filed "paper."[26]  Nevertheless, Miracero advances a different argument.  It asserts that "the additional time provision of Rule 6(d)

---

[23]

        FED. R. CIV. P. 6(d).

[24]

        United States District Court for the Southern District of New York, Electronic Case Filing Rules & Instructions, Rule 9.1 (Mar. 17, 2014), *available at* http://www.nysd.uscourts.gov/ecf/ECF Rules Revision 031714.pdf.

[25]

        *Cf. Thompson v. Rose*, 505 F. Supp. 183, 184 (W.D. Tenn. 1981) (adding three days to the deadline for service of objections to a magistrate judge's report and recommendation under Rule 6 when the clerk of court served the report by mail).

[26]

        *See, e.g.*, *Alli v. Steward-Bowden*, 11 Civ. 4952 (PKC) (KNF), 2013 WL 6503507, at *3 (S.D.N.Y. Dec. 5, 2013) ("In a case assigned to the court's Electronic Case Filing system, service is complete upon the transmission, from the court, of a notice of electronic filing, provided all parties receive it.  *See* Electronic Case Filing Rules & Instructions Section 9.1."); *Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, 05 Civ. 2755 (JS), 2008 WL 8443564, at *4 (E.D.N.Y. Sept. 2, 2008) (adding three days to the deadline to respond when the "initial Report and Recommendation was entered on ECF and electronically served upon the parties"); *Sembler v. Advanta Bank Corp.*, No. 07 Civ. 2493 (RJD), 2008 WL 2965661, at *1 (E.D.N.Y. Aug. 1, 2008) (same).

applies when service by electronic means is made by one party on another party (either directly or via court facilities) but does not apply when service by electronic means is made <u>by the court</u> on the parties."[27]  Miracero's argument is entirely unpersuasive, both as a technical matter and as a matter of common sense.

As a technical matter, Rule 6(d)'s language providing a three-day extension in cases of electronic "service" does not distinguish between service by a party and service by a court.  Rule 77(d)(1) requires the clerk of court to "serve" notice of entry of every order and judgment upon each party not in default.  It thus makes clear that Rule 6(d)'s unqualified reference to "service" includes service by the clerk.

As a practical matter, it simply would make no sense at all to afford an additional three days in which to respond to a "paper" served electronically by a party, but not to an electronic "paper" served by the clerk.  If, as the rule makers have determined, the fact of electronic rather than physical service warrants additional time in the first case, it warrants additional time in the second, as the identity of the server has nothing whatever to do with the desirability of added time in which to respond.

Accordingly, the objections to the report and recommendation were timely.

*Arbitrability*

Stemcor argued before the arbitral panel that its disagreement with Miracero is not a "contract dispute" within the meaning of the parties' arbitration agreement.  It lost.  It made the same arguments to the magistrate judge.  It lost again.  It now makes the same argument in its

---

[27]  DI 48 at 4 n.7 (emphasis in original).

objections to the magistrate judge's report and recommendation.  This Court finds them no more persuasive now than in their previous iterations.

Stemcor's principal contention is the Mexican taxation dispute was too "collateral" to come within the meaning of the parties' arbitration agreement.  It therefore asserts that this Court should vacate the award under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards[28] and the Federal Arbitration Act.[29]  Stemcor further argues that the panel acted in "manifest disregard of the law" by reading the parties' arbitration agreement too broadly.[30]

The threshold problem with this argument is that Stemcor agreed that questions of arbitrability – including the question of what was, and was not, a "contract dispute" – were for the arbitrators.  It contracted for arbitration "per the rules of the American Arbitration Association in New York."[31]  When parties "have provided for arbitration of an international dispute by . . . the American Arbitration Association without designating particular Rules, the arbitration shall take place in accordance with [International Centre for Dispute Resolution ('ICDR')] Rules."[32]  And the ICDR Rules, in turn, provide that "[t]he tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration

---

[28]

       June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 53.

[29]

       9 U.S.C. §§ 10(a)(3) and 10(a)(4).

[30]

       *See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339-40 (2d Cir. 2010) (discussing the present state of "manifest disregard of the law" doctrine).

[31]

       *See* DI 5 Ex. 4.

[32]

       ICDR Rules Art. 1.

agreement."[33]

When parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[34]  In these circumstances, "a district court considering whether to confirm the award must review the arbitrators' resolution of such questions with deference."[35] Accordingly, Stemcor's argument for upending the arbitral award is wholly unconvincing. Considering that an arbitral award "should be enforced . . . if there is a *barely colorable justification* for the outcome reached," the fact that Stemcor agreed to delegate arbitrability determinations is determinative.[36]

Stemcor relies heavily on *Stolt-Nielsen, S.A. v. AnimalFeeds International Corp.*[37] for the proposition that an arbitral panel acts in "manifest disregard for the law" when it infers an "implicit" agreement to arbitrate a category of disputes.[38]  But *Stolt-Nielsen* addressed a situation in which the arbitrators determined that they could adjudicate class action disputes even where both

---

[33]

ICDR Rules Art. 15(1).

[34]

*Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73 (2d Cir. 2012) (quoting *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005)).

[35]

*Id.* at 74.

[36]

*Leeward Constr. Co. v. Am. Univ. of Antigua-College of Medicine*, No. 12 Civ. 6280 (LAK), 2013 WL 1245549, at *1 (S.D.N.Y. Mar. 26, 2013) (quoting *T.Co Metals*, 592 F.3d at 339 (emphasis in original)).

[37]

559 U.S. 662 (2010).

[38]

*See, e.g.*, Stemcor's Reply Mem. [DI 44] at 3-4.

parties acknowledged that they never had reached any such agreement.[39]  The Supreme Court was careful to note also that "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable."[40]  In this Circuit, "awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent," and "this standard essentially bars review of whether an arbitrator misconstrued a contract."[41]  These barriers are insuperable.

Stemcor cannot now "disown its agreed-to obligation to arbitrate . . . question[s] of arbitrability."[42]  It was entirely predictable back in 2007 that disagreements might arise as to what is, and is not, a "contract dispute."  But by agreeing to abide by AAA rules, Stemcor empowered the arbitrators to decide such matters.  Stemcor may not like that ruling, but Stemcor is bound by its bargain.  *Así es la vida*.

The Court has considered Stemcor's other arguments on arbitrability, including its arguments as to estoppel and comity, and finds them to be equally without merit.

---

[39]

*Stolt-Nielsen*, 559 U.S. at 676 (noting that the "parties were in complete agreement regarding their intent.").

[40]

*Id.* at 671 (quoting *Major League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation marks and citation omitted)).

[41]

*T.Co Metals*, 592 F.3d at 339 (internal citations and quotation marks omitted).

[42]

*Republic of Ecuador v. Chevron*, 638 F.3d 384, 395 (2d Cir. 2011).

*Attorneys' Fees*

The arbitrators awarded fees and costs incurred in the arbitration to Miracero.  In doing so, they looked to Article 31 of the ICDR Rules, which states that "[t]he tribunal shall fix the costs of arbitration in its award" and that "[t]he tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable."[43]  Stemcor claims that the panel lacked authority to awards fees and costs.  It argues that, while the ICDR Rules governed the arbitration procedurally, the CISG provided the substantive law and that the CISG trumps in the event of a conflict with the ICDR Rules.[44]  Stemcor contends that attorneys' fees are unavailable under CISG Article 74 because that provision limits damages to "a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach."  Stemcor therefore claims that the award was "contrary to public policy" and "reflects a manifest disregard of the law."

This argument fails for at least two reasons.  First, courts repeatedly have held that choice-of-law provisions do not override arbitrators' ability to award fees, both in general and under ICDR Article 31 in particular.[45]  Second, CISG Article 74 does not unambiguously bar recovery of

---

[43]

See DI 35 Ex. 1 ¶ 34.

[44]

In advancing this argument, Stemcor looks to Article 1, clause 2, of the ICDR Rules ("These rules govern the arbitration, except that, where any such rule is in conflict with any provision of the law applicable to the arbitration from which the parties cannot derogate, that provision shall prevail.").  *See also* DI 5 Ex. 12 ¶ 5 ("Order Following Briefs on Preliminary Matters" (Apr. 12, 2013)) ("Given the applicability of U.S. law, as provided for in the arbitration clauses and the parties' agreements, this Panel finds the applicable U.S. law to be applied is the CISG.").

[45]

See *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) ("[A] choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the right to arbitrate claims for attorneys' fees"); *F. Hoffman La Rouche, Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 331 (S.D.N.Y. 2010) (arbitral panel "reasonably concluded that the New York choice of law provision applied only to the law governing the merits and was not intended to override the parties'

fees and costs.  While one appellate court has held so,[46] commentators are quite clear that the issue

generally remains unresolved.[47]  Certainly the question is open in this Circuit.  At most, then,

Stemcor has identified an ambiguity in the law, which the arbitrators here resolved in favor of

granting fees.  Since that decision was at least reasonable, and certainly "barely colorable,"[48] this

Court will not disturb it.[49]

*Conclusion*

Accordingly, petitioner's motion to vacate the arbitral award [DI 2] is denied, and

respondent's cross-motion to confirm the arbitral award [34] is granted.  Respondent's motion for

sanctions [DI 37] is denied, as the Court is satisfied that petitioner's position was not frivolous, and

the Court is not persuaded that it was put forward for an improper purpose.  Stemcor's objections

all are overruled.

---

contractual agreement to award attorneys' fees" where parties had contracted for arbitration
under the ICDR Rules.)

[46]

*See Zapatos-Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 388-89
(7th Cir. 2002).

[47]

*See, e.g.*, David B. Dixon, *Que Lástima* Zapata*!  Bad CISG Ruling on Attorneys' Fees Still
Haunts U.S. Courts*, 38 U. MIAMI INTER-AM. L. REV. 405, 422 (2007); Larry A. DiMatteo
et. al., *The Interpretive Turn in International Sales Law: An Analysis of Fifteen Years of
CISG Jurisprudence*, 24 NW. J. INT'L L. & BUS. 299, 422-23 (2004) (noting that "German
courts have required parties to pay attorneys' fees under Article 74.").

[48]

*Leeward Constr. Co.*, 2013 WL 1245549, at *1.

[49]

*Cf. DigiTelCom, Ltd. v. Tele2 Sverige AB*, 12 Civ. 3082 (RJS), 2012 WL 3065345, at *5
(S.D.N.Y. July 25, 2012) ("[T]he Tribunal awarded costs and fees pursuant to Article 31 of
the [ICDR Rules] . . . There is nothing to suggest that the Tribunal's award was even
inconsistent with the ICDR rules, much less that it constituted a 'manifest disregard of the
law.'").

14

The Clerk shall enter judgment and close the case.

SO ORDERED.

Dated:        September 30, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)